## Case No. 12,169.

### The RUSSIA.

### [4 Ben. 572.] 1

District Court, S. D. New York. Feb., 1861.

COLLISION IN PORT—DAMAGES—RAISING VESSEL—FREIGHT—DEMURRAGE.

1. Where a vessel which had arrived at her port of destination, was sunk at her anchorage, with her cargo on board, in a collision with a steamer, for which the latter was held responsible, and, instead of raising the vessel and cargo entire at once, which it appeared could have been done, competent parties having offered to do it for $25,000, the owners of the vessel adopted the method of getting out part of her cargo by divers, before attempting to raise her, in which process more time was consumed than would have been necessary for the raising of the vessel and cargo entire: *Held*, that the damages allowed to the libellant for the expense of raising must be reduced to $25,000.

2. In estimating the damage to the cargo, its value must be taken at the port of destination, less freight and duties.

[Cited in The Aleppo, Case No. 158.]

3. Demurrage could not be allowed for the increased time occupied in raising the vessel, beyond the time which it would have taken to raise her with her cargo entire.

In this case, the Austrian ship Figlia Maggiore, which had arrived in New York harbor from a foreign port, was sunk at her anchorage, in a collision with the Russia, for which the Russia was held responsible. [Case No. 12,168.] Exceptions were filed by the claimants to the report of the commissioner as to the damages.

J. C. Carter and C. Donohue, for libelant.

D. D. Lord, for claimants.

BLATCHFORD, District Judge. The 12th exception is allowed, and the amount awarded on account of the bill of the Atlantic Submarine Wrecking Company, is reduced to

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

$25,000, with interest from July 24th, 1869. The evidence satisfies me that the method adopted of diving out part of the cargo, before any attempt was made to raise vessel and cargo together, entire, was needlessly and even recklessly dilatory and expensive, and was, on the whole, very much more injurious to the cargo itself that was so dived out, than the raising of vessel and cargo together would have been. The evidence is clear, that vessel and cargo could have been raised entire, at once, by competent persons, who would have done so for $25,000, having all the necessary skill and appliances for the purpose. Instead of that, the company which did the work consumed 53 days in the combined operations of first diving out part of the cargo, and then raising together the vessel with the rest of the cargo. The legitimate work of raising the vessel, with the cargo left in her, did not consume more than one-quarter of the 53 days. The evidence shows, that the vessel and her cargo, as one, could have been raised bodily in the same time. Therefore 39 days of the 53 were utterly wasted. The consumption of those 39 days swelled every item of expense charged for wages of men and use of vessels and apparatus. It also left the major part of the cargo that was, in fact, dived out during the 39 days, and which was the most perishable part, to remain under water for a longer time, exposed to damage from water, than if it had been raised with the vessel in 14 days. By the latter course, the whole cargo would have come out of water in 14 days. As it was, but a trifle more than one-third of what cargo was got out during the 39 days came out during 14 days, so that nearly two-thirds of the dived out cargo remained under water longer by the course adopted, than it would have remained if the proper method had been followed. Besides, the cargo dived out was, to a large extent, cargo that was lighter than water, and the taking of it out diminished the buoyancy of the vessel, and increased the labor of lifting her. Moreover, much cargo, it is clear, perished by the breaking open of packages, in the handling of them, by divers, at a great depth under water. This damage would have been saved if the cargo had not been broken out until after the vessel was raised.

The 13th exception is allowed so far as to strike out 39 days from the 202 days allowed for as demurrage.

In regard to exceptions 14 to 28, both inclusive, I understand the commissioner to say, in his report, that, in making up the amounts of the items covered by those exceptions, he has deducted, from the value of the cargo at New York, the freight and duties. The principle of taking the value at New York, less the freight and duties, is correct. But I think, from an examination I have made of some of the items in connection with the evidence, that the commissioner has, in some instances, unintentionally

omitted to deduct the freight, and the report is sent back for a re-examination of the calculations of amounts, in respect to the items covered by exceptions 14 to 28, both inclusive. I can see no error in the allowance of the item covered by exception 29, either as to principle or computation, but the subject of exception 29, and the subject of exception 30, are so connected, that, inasmuch as there seems, on the evidence of Mr. Schnetzspahn, to be an error in allowing the entire item of $24,864 20, covered by exception 30, without a deduction of freight, and proceeds of sale of madder, and perhaps other deductions, the report is sent back for a revision by the commissioner of his statements of the amounts of the two items covered by exceptions 29 and 30. But no further testimony is to be taken in the case. I have labored under difficulty in regard to the claim of Mr. Schnetzspahn, and other claims in regard to cargo, from not having been furnished with the exhibits put in and referred to in the evidence in respect to them, or with any statement showing how the commissioner arrived at the amounts allowed by him.

The commissioner will make a new report in conformity with the foregoing directions.